# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **MAREK BROTHER SYSTEMS, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-01082** |
| | § | |
| **JUAN ENRIQUEZ and JP ACOUSTICS AND DRYWALL, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 14), filed June 10, 2019; Defendants' Verified Response to Plaintiff's Renewed Motion for Injunctive Relief (Doc. 17), filed June 14, 2019; Plaintiff's Memorandum of Law in Support of Renewed Motion for Preliminary Injunction (Doc. 18), filed June 18, 2019; Plaintiff's Reply to Defendants' Response to Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 19), filed June 20, 2019; Defendant's Supplemental Response and Brief in Opposition to Plaintiff's Renewed Motion for Injunctive Relief (Doc. 23), filed June 25, 2019; and Plaintiff's Reply to Defendants' Supplemental Response to Plaintiff's Renewed Motion for Injunctive Relief (Doc. 30), filed June 28, 2019. After considering the application, briefs, and applicable authority, the court **denies** Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 14) and **orders** the parties to submit a proposed discovery and briefing schedule and suggested date for the preliminary injunction hearing.

## I.    Factual and Procedural Background

Marek Brother Systems, Inc. ("Marek" or "Plaintiff") is a business that offers field construction services for the commercial sector, including "metal framing and gypsum assemblies, building information modeling, ceilings and acoustical solutions, flooring, paint, specialty coatings

**Memorandum Opinion and Order – Page 1**

and wallcoverings, fabric panels and stretch systems, [and] window treatments." Pl.'s Renewed Mot. for Prelim. Inj., Doc. 14 at 2. Marek also offers services for the residential sector, including "turnkey drywall hanging and finishing, spray applied and hand trowel textures, level 5 smooth finishes, reveals and specialty trims, and sound and fire rated assemblies." *Id*. at 3. Juan Enriquez ("Enriquez") is a former Estimator and Project Manager for Marek. *Id*. at 3. He resigned his employment with Marek on or about March 21, 2019. *Id*. Sometime prior to his resignation with Marek, Enriquez founded a construction services company, JP Acoustics and Drywall, LLC ("JP Acoustics"). *Id.* Marek does not allege the specific types of services offered by JP Acoustics, or whether it caters to the commercial or residential sector.

Marek contends that, on August 22, 2018, Enriquez sent an e-mail to his personal e-mail address that included "confidential contact information for Marek's clients, vendors, manufacturers, and subcontractors, which included contact phone numbers, mailing addresses, fax numbers, and proprietary notes Marek had on those customers." Pl.'s Reply, Doc. 30 at 2. Marek contends that it has "spent years accumulating" this client information and contends that it is entitled to trade secret protection. *Id*. at 3. Marek also contends that, during Enriquez's employment, he started "at least one job for one of Marek's customer," Muckleroy and Falls, and also "proposed on other jobs for Marek clients." *Id*.; Pl.'s Mem. of Law, Doc. 18 at 2. It contends that Muckleroy and Falls has been Marek's client since 2014, and it continues to perform services for this client. Pl.'s Mem. of Law, Doc. 18 at 2. Marek contends that, since Enriquez's resignation, he is "using Marek's confidential information in order to advance JP Acoustics' business," and it has consequently suffered harm. Pl.'s Renewed Mot. for Prelim. Inj., Doc. 14 at 4.

On May 6, 2019, Marek filed the Original Complaint and Application for Temporary Restraining, Order, Preliminary and Permanent Injunction (Doc. 1) and asserts claims against Defendants for: (1) misappropriation of trade secrets under Texas law; (2) misappropriation of

trade secrets under federal law; (3) breach of fiduciary duty; (4) violation of the Computer Fraud and Abuse Act; (5) tortious interference with contract; and (6) unjust enrichment. On May 6, 2019, Marek additionally filed the Application for Temporary Restraining Order, Preliminary and [Permanent] Injunction (Doc. 4). On June 10, 2019, Marek filed the Renewed Motion for Preliminary Injunction (the "Renewed Application"), and Request for Expedited Hearing (Doc. 14). On June 11, 2019, the court denied without prejudice Marek's request for expedited hearing; advised the parties that it would construe the renewed motion as an application for a temporary restraining order; and directed Defendants to file a response to the renewed motion. Doc. 16.

In the Renewed Application, Marek seeks a temporary restraining order that enjoins Defendants from:

(i) directly or indirectly utilizing or disclosing Marek's confidential information or trade secrets;

(ii) offering, providing or selling, or participating in offering, providing or selling, products or services competitive with or similar to products or services offered by, developed by, designed by, or distributed by Marek to: (1) any person, company, or entity who was a customer or potential customer of Marek for such products or services during the 12 months prior to Defendant Enriquez's resignation from Marek;

(iii) hiring, soliciting, or encouraging any current employee of Marek to cease work for Marek and/or to work for, or be associated with, JP Acoustics or any of JP Acoustics' affiliates;

(iv) destroying, concealing, or disposing of any document, paper, or electronic files, or other materials that in any way relate to, or are relevant to, the conduct, causes of action, or defenses in this lawsuit; and

(v) altering, deleting, removing, or writing over in any respect any documents, computer files (including, but not limited to, e-mails, hard drives, disc drives, zip drives), data, drafts, text messages, or other things relating in any way to Marek, including information regarding Marek's clients, employees,

> property, or business information, until such time as those materials may be turned over in discovery or until further order of the Court.

Pl.'s Mot. for Prelim. Inj., Doc. 14 at 7-8.

## II. Legal Standard

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held. *Federal Home Loan Morg. Corp. v. American Home Mortg. Corp.*, 2007 WL 2228619, at *2 (N.D. Tex. 2007).

There are four prerequisites for the extraordinary relief of a temporary restraining or preliminary injunction. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

### III. Analysis

Marek argues that it is likely to succeed on the merits of its claims for trade secrets misappropriation, a violation of the Computer Fraud and Abuse Act, tortious interference with contract/business relations, and breach of fiduciary duty. With respect to Marek's claims pursuant to the Computer Fraud and Abuse Act and breach of fiduciary duty under Texas common law, the court determines that these allegations are based on past acts committed by Enriquez during his employment at Marek, and any resulting damages would be readily quantifiable. A harm is irreparable "where there is no adequate remedy at law, such as monetary damages." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975). Based on the factual allegations supporting these claims, the court determines that they can be remedied through monetary damages and are accordingly not entitled to the requested injunctive relief.

With respect to Marek's claims for trade secret misappropriation and tortious interference with contract/business relations, the court determines that, at this stage, Marek has failed to demonstrate that there is a substantial likelihood that it will succeed on the merits of these claims and, accordingly, the court need not reach the remaining three elements.

### A. Trade Secret Misappropriation

To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836; *Blue Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018). Similarly, to establish trade secret misappropriation under Texas law, a plaintiff must show: (1) a trade secret; (2) Defendants acquired the trade secret by breach of a confidential relationship or other improper means; and (3) Defendants used the trade secret without authorization. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 449 (5th Cir. 2007) (citations omitted).

Under both the DTSA and TUTSA, misappropriation includes (1) "disclosure or use of a trade secret of another without express or implied consent by a person who ... used improper means to acquire knowledge of the trade secret" and (2) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Tex. Civ. Prac. & Rem. Code § 134A.002(3); 18 U.S.C. § 1839(5). "Improper means" include the "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A).

At the temporary restraining order stage, a court does not determine that the information at issue is a trade secret; rather, it determines "whether the applicant has established that the information is entitled to trade-secret protection until the trial on the merits." *First Command Financial Planning, Inc. v. Velez*, 2017 WL 2999405, at *8 (N.D. Tex. May 8, 2017). To establish entitlement to trade secret protection, the owner must take "reasonable measures under the circumstances to keep the information secret" and the information must derive economic value from not being generally known or readily ascertainable through proper means. 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6).

In this case, Marek contends that the trade secret was the information attached to an e-mail dated August 22, 2018, which Enriquez sent from his Marek e-mail address to his personal e-mail address.[1] Pl.'s Reply, Doc. 30 at 2. Marek contends that this information "included confidential

---

[1] Marek also alleges that Enriquez disclosed its "pricing and business strategies" contained in attachments to an e-mail dated December 5, 2018. Pl.'s Mem. of Law, Doc. 18 at 5-6. Marek does not allege with specificity the nature of these documents or "strategies," nor does it provide copies to the court of the attachments allegedly sent in the e-mail. Marek solely provides an unauthenticated copy of what is purported to be an e-mail sent by Enriquez to his person e-mail address. *See* Pl.'s Compl., Doc. 1, Ex. B. The e-mail is unaccompanied by an affidavit or declaration, and merely states in the "Subject" and "Attachments" line, "Marek Bros December 2018 Price Sheet." This document and the lack of accompanying factual allegations in the application are insufficient for the court to ascertain whether Enriquez sent himself documents that contain information subject to trade secret protection. The court, accordingly, will not consider whether Marek is entitled to a temporary restraining order based on the alleged misappropriation of its "pricing and business strategies." Moreover, in Marek's most recent briefing to the court with respect to this matter, it stated that Marek's trade secret information is the "confidential contact information and proprietary notes that Enriquez sent to his personal e-mail" on August 22, 2018. Pl.'s Reply to Defs.' Supp. Resp., Doc. 30 at 2. Marek,

contact information for Marek's clients, vendors, manufacturers, and subcontractors, which included contact phone numbers, mailing addresses, fax numbers, and proprietary notes Marek had on those customers." *Id.* at 2-3. Marek does not state with specificity the nature of the "proprietary notes" included in the customer information list.

"[I]nformation that a firm compiles regarding its customers may enjoy trade secret status under Texas law." *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 466 (Tex. App.—Austin 2004, pet. denied) (citations omitted). "But this does not mean that trade secret status automatically attaches to any information that a company acquires regarding its customers; if it did, it would amount to a *de facto* common law non-compete prohibition." *Id.* at 467. "Before any information can be a trade secret, there must be a substantial element of secrecy." *Id.* (citation omitted). Secrecy requires that the information "is not generally known or readily ascertainable by independent investigation." *Id.* (citations and quotation marks omitted). "It is the burden of the party claiming secrecy status to prove secrecy." *Id.* (citations omitted).

Marek contends that it "makes diligent efforts" to ensure the secrecy of its client information, specifically by "restricting access to Marek facilities, employing computer passwords and access codes, and restricting disclosure of information to personnel on a need-to-know basis stemming from job requirements and duties, in addition to its employee policies." Pl.'s Mem. of Law, Doc. 18 at 6. In response, Defendants argue that the identities of Marek's clients could be easily acquired by others. Defendants argue that there are no allegations that this information "could not be readily found online or in the Yellow Pages." Def.'s Resp., Doc. 23 at 4.

---

through its representation to the court, has narrowed the court's consideration of the trade secret issue to whether Defendants misappropriated Marek's information by allegedly sending client contact information to Enriquez's personal e-mail address on August 22, 2018.

At this stage, Marek has failed to persuade the court that the customer information Enriquez sent to his personal e-mail address "is not generally known or readily ascertainable by independent investigation." *Trilogy Software, Inc.*, 143 S.W.3d at 467. "[A] customer list of readily ascertainable names and addresses will not be protected as a trade secret." *Zoecon Industries, a Div. of Zoecon Corp. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983) (citation omitted). Although Marek does not provide a copy of the e-mail attachments to the court—which it could have done under seal to maintain the secrecy of such information—it alleges that the information contains "phone numbers, mailing addresses, and fax numbers," as well as proprietary notes that Marek maintained on these customers. Marek, however, does not describe the nature of such "notes" or why they should be considered proprietary information as a matter of law. With respect to the contact information for the clients, the court determines that this information could readily be compiled through an independent investigation, and Marek has accordingly failed to establish a "substantial element of secrecy." *See Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ). Marek's allegation that it has "spent years accumulating" the contact information and expended "years of goodwill" to do so is insufficient for the court to conclude, based on the paucity of factual specificity, whether the information was acquired and maintained with considerable secrecy such that it might be entitled to trade secret protection.

Even assuming Marek had demonstrated that the client information list was entitled to trade secret protection, it has not shown that there is a substantial threat of irreparable injury as a result of Enriquez sending this e-mail to his personal address. Both parties acknowledge that Defendants have performed services for only one of Marek's customers, Muckleroy and Falls, since JP Acoustics was founded. Marek does not allege that Defendants have performed work for any of its other clients. Marek contends that JP Acoustics started "at least one job" for Muckleroy

and Falls while Enriquez was employed by Marek. *Id*. Marek alleges that Muckleroy and Falls has been its customer since 2014, and, further, that it continues to do jobs for this client. *See* Pl.'s Mem. of Law, Doc. 18 at 2. Marek does not allege, however, that Defendants, at any time, outbid Marek for a certain job, or otherwise took business away from Marek with respect to this client. The record, rather, suggests that both parties are currently servicing Muckleroy and Falls, to neither's detriment and without direct competition.[2] In the absence of any evidence that Defendants' work for Muckleroy and Falls is interfering or otherwise injuring Marek's business relationship with this client, the court cannot reasonably infer that Marek is currently, or substantially likely, to suffer an irreparable injury due to Defendants' contact with it. The court further notes that Marek has failed to allege that Defendants offer services that directly compete with those offered by Marek. Marek merely alleges that Defendants provide "construction services," which renders it "a direct competitor to Marek." Pl.'s Renewed Mot. for Prelim. Inj., Doc. 14 at 3. This statement is conclusory, particularly in light of the extensive description of services that Marek asserts that it offers in connection with its field construction services business, and it is undercut by Marek's allegation that both parties are currently servicing Muckleroy and Falls.

For the reasons stated herein, the court determines that Marek is not entitled to the extraordinary relief of a temporary restraining order because it has not met the first two requirements to obtain such relief, namely, that there is a substantial likelihood that it will prevail

---

[2] Bret Young's Affidavit further supports the court's determination that Marek has failed to allege that Defendants' work for Mackleroy and Falls has interfered with Marek's business relationship with that client and is likely to suffer irreparably injury if Defendant continues providing services to it. The affidavit states that, since 2014, Marek "has bid on seventeen (17) projects for Muckleroy & Falls, and has successfully bid on four (4) separate projects for Muckleroy & Falls." *See* Pl.'s Mem. of Law, Doc 18, Ex. A. ¶ 13. "Most recently, in 2019, Marek sold two projects to Muckleroy & Falls." *Id*. The court cannot ascertain whether the two projects sold in 2019 are considered as two of the four successful bids for this client since 2014, but, nevertheless, it determines that Marek's success rate with this client over the course of five years has been the highest in 2019, the period during which Marek contends that Enriquez, both during his employment and after his resignation, bid and performed work for Muckleroy & Falls.

**Memorandum Opinion and Order – Page 9**

on the merits of its trade secret misappropriation claim and that there is a substantial threat that irreparable harm will result if the requested relief is not granted. While Marek may ultimately prevail on this claim at trial, the existing record simply does not contain sufficient evidence to entitled it to a temporary restraining order at this stage of the proceedings with respect to the first two requirements to obtain this relief.

### B. Tortious Interference with Contract/Business Relations

Marek contends that it is substantially likely to succeed on the merits of its claim for tortious interference with existing contracts based on "[t]he timing of Enriquez's departure from Marek, combined with the evidence that during his employment with Marek he solicited Marek's customers for JP Acoustics and that JP Acoustics actually started at least one job for Marek's customers while Enriquez was still employed by Marek." Pl.'s Mem. of Law, Doc. 18 at 7.

To prevail on a claim for tortious interference, a plaintiff must show: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Although Marek repeatedly alleges that Enriquez solicited Marek's customers for JP Acoustics prior to his resignation with the company, it fails to provide any factual specificity regarding these solicitations. Marek does not identify specific clients with whom Marek maintained a contractual relationship and with whom Enriquez willfully interfered by committing the alleged solicitation. Marek further fails to allege that Defendants successfully bid to these unidentified clients, or has pending bids that could interfere with Marek's existing contracts with them.

With respect to Defendants' work for Mackleroy and Falls, the court determines that Marek, at this juncture, has failed to establish that it has suffered actual damages or loss, or is

likely to suffer such damages or loss, in connection with its contracted work for that client. Marek states that, in 2019, it sold two projects to Muckleroy & Falls—in spite of Defendants' alleged work done for that client on February 14, 2019, while Enriquez was a Marek employee. *See* Pl.'s Reply, Ex. A ¶¶ 13-14. Marek has failed to identify a specific contract between it and Muckleroy and Falls with which Defendants willfully interfered and, moreover, the allegations show that the parties are coextensively providing work to this client. There are no allegations that Defendants and Marek both bid on a specific project to Muckleroy and Falls, and Defendants successfully bid in such a manner that constituted tortious interference. Accordingly, the court determines that Marek has failed to establish that there is a substantial likelihood that it will prevail on the merits of its tortious interference claim, and it is, therefore, not entitled to a temporary restraining order based on this claim.

### IV. Conclusion

For the reasons herein stated, Plaintiff has not met its burden of establishing the requirements for a temporary restraining order. The court therefore **denies** Plaintiff's Renewed Motion for Preliminary Injunction (Doc. 14). The court **directs** the parties to submit a proposed discovery and briefing schedule for a preliminary injunction, and a suggested hearing date on the preliminary injunction. This schedule must be submitted by **August 1, 2019**.

**It is so ordered** this 24th day of July, 2019.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge